```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF ILLINOIS
                        SPRINGFIELD DIVISION


UNITED STATES OF AMERICA,    )
                             )
         PLAINTIFF,          ) 03-30115
                             )
     VS.                     ) STATUS HEARING
                             )
MILTON LACY,                 ) SPRINGFIELD, ILLINOIS
                             )
         DEFENDANT.          )


              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SUE E. MYERSCOUGH
              UNITED STATES DISTRICT JUDGE

APRIL 27, 2018

A P P E A R A N C E S:


 FOR THE PLAINTIFF:     CRYSTAL CORREA
                        ASST. U.S. ATTORNEY
                        318 SOUTH SIXTH
                        SPRINGFIELD, ILLINOIS



 FOR THE DEFENDANT:     MICHAEL AJAY CHANDRA
                        ASST. FED. PUBLIC DEFENDER
                        600 E. ADAMS - 3RD FLOOR
                        SPRINGFIELD, ILLINOIS





 COURT REPORTER:        KATHY J. SULLIVAN, CSR, RPR, CRR
                        COURT REPORTER
                        600 E. MONROE
                        SPRINGFIELD, ILLINOIS
                        (217)492-4810
```

```
 1                        I N D E X

 2   WITNESS                   DIRECT   CROSS   REDIRECT   RECROSS

 3

 4

 5

 6

 7

 8

 9

10                     E X H I B I T S

11   GOVERNMENT'S EXHIBIT
     NUMBER                            IDENTIFIED   ADMITTED
12

13

14

15

16

17   DEFENDANT'S EXHIBIT
     NUMBER                            IDENTIFIED   ADMITTED
18

19

20

21

22

23

24

25
```

1     P R O C E E D I N G S
2  *   *   *   *   *   *   *   *   *   *   *
3         THE COURT:  This is 03-30115, the United
4  States of America versus Milton Lacy.
5      The United States is represented today by
6  Crystal Correa.  Milton Lacy is present with his
7  attorney, Michael Ajay Chandra with the Federal
8  Public Defender's Office.  Michelle Cyrus is
9  present.
10     Mr. Chandra and Mr. Lacy, I'm calling this
11 hearing because of an update I received from
12 Ms. Cyrus--I believe it was yesterday--which, quite
13 frankly, sent me to her office to ask that a
14 petition to revoke be filed.
15     As you know, Mr. Chandra, Mr. Lacy received the
16 most lenient sentence I could give him rather than
17 putting him in the Bureau of Prisons, and he has
18 already violated.
19     Ms. Cyrus, on the other hand, explained what
20 Mr. Lacy had had to say, which I don't find
21 excusable at all.  He was bored, he was frustrated.
22     Quite frankly, I give one chance, Mr. Lacy.
23 And I thought I made that clear to you; that I would
24 give you this chance because I thought you could
25 succeed.  I don't give two chances.  You know, I

1  don't know if you've been given chance after chance
2  with somebody else, but this is not what I expected
3  out of you.
4      I mean this isn't personal to me.  It's
5  personal to you.  You know, you're the one who is in
6  control of your life from here on out.  I let you
7  out and I want you to succeed, and this is not it.
8      And now Ms. Cyrus--to further complicate
9  matters--hands me a letter saying you suddenly have
10 a job as of today.  I don't understand.
11     Mr. Chandra, does your client wish to explain
12 what's going on?
13          MR. CHANDRA:  Your Honor, my client would
14 address the Court, if that's okay.
15          THE COURT:  Mr. Lacy.
16          THE DEFENDANT:  Your Honor, I don't want to
17 shift the blame.  I'm apologetic to the Court and to
18 my wife and daughter for what I have done.  And
19 there's no excuse for it.
20     I was out every day searching, job searching
21 and doing this trying to get my life on track.  But
22 as, you know, when I was here the first time,
23 everything that I worked towards at IDOC was geared
24 towards me not being here at Springfield, Illinois.
25     And when I come here, you know, I had to stay

here in Springfield knowing my family was in Chicago. And you know, just been a lot of, you know, burden me with finding employment, finding -- you know what I mean, a class that will accept me to go to school. And just -- just a lot of things that have overwhelmed me at once.

You know, I'm in a house by myself, as my P.O., you know, came and seen. It's just me there, you know, majority of the time. And you know, I been dealing with a lot of losses. You know, just a lot of things that had took place that, you know, I feel. But this job was something that I had applied for, you know, before all this happened and just, you know, yesterday I think, I received this news I had got the -- you know, that I got this job or whatever.

And I'm just asking to, you know -- I ain't saying it to be lame because, you know, I understand, but I want to prove myself that I could do better. And you know, I want to get a job. I never had a job in my life. And I want to work, I want to do these things. It's just that at that particular moment, I -- I have so much stuff on my mind. And I fell short. And I thought that I could be, you know -- get away with it without it -- it

1  would go up unnoticed.  And that wasn't the case.
2         But now I apologize.  Only thing I can do is,
3  you know, prove that it would never happen again.  I
4  signed up for school, a school -- Lincoln Land start
5  May 28th.  I been taking these steps.  But like I
6  say, everything that I have and I produced to the
7  Court was for me to be in Markham, Illinois, so that
8  I wouldn't even be around this situation.  And
9  Michelle Cyrus made it clear that that wasn't a
10 possibility until after I complete my home
11 confinement to where -- you know, go out, that my
12 wife and, you know, family members all up there and
13 I was here at her mother house.  Then she -- my wife
14 had to find a house to put me in to go through this
15 process.
16        And it was just like -- it was starting to be
17 overwhelming.  It felt like still being in the -- I
18 can't even step out the door, can't take the trash
19 out.  You know, there's no phone there.  Just a lot
20 of things that was going on.  And I just felt like,
21 you know, it was just all caving in on me.
22        Like I say, I don't want to have an excuse for
23 my actions because I know I was wrong.  But I think
24 I finally, you know, got my -- a start with this job
25 to show that I could be a productive member to

1  society.  And that this dirty drop wasn't -- you
2  know, it ain't gonna repeat itself.  And that I
3  could do the right thing.
4      And you know, that's all I can really say, you
5  know.  But I am -- I went to -- Michelle Cyrus gave
6  me information to go to meetings.  I went to a
7  meeting.  I was willing to go to another one.  We
8  could not get the address to another meeting, then
9  she told me where you gotta go to court.  But I'm
10 taking initiative, taking the steps that it's
11 taking, you know, to get my life on track.
12      And as you know, I just did 58 months in prison
13 and I don't think that going back will even help the
14 situation.
15          THE COURT:  Well, behaving in this fashion
16 is not going to help in this situation at all.
17          THE DEFENDANT:  Yes, ma'am.
18          THE COURT:  It's not that you're on
19 vacation while you're at home.  You're out of
20 prison, you're supposed to be working, you're
21 supposed to get a substance abuse assessment, you're
22 supposed to go to meetings, and you're supposed to
23 go to work.
24          THE DEFENDANT:  Yes, ma'am.  Well the
25 meetings -- I went for IDOC, I went and got an

1  assessment, but IDOC had -- you know what I'm
2  saying, I was on federal papers.  They took their
3  self out of it.  And I don't have a P.O. or nothing
4  going on with them that I know of.  They ain't never
5  said nothing to me after Michelle Cyrus talked to
6  them.
7              THE COURT:  Well, Michelle is going to make
8  sure that you go -- she has -- quite frankly, she
9  has advocated for you.  She's very frustrated with
10 you, but she said I should give you another chance.
11             THE DEFENDANT:  Yes, ma'am.
12             THE COURT:  And this is your other chance.
13 And that's as many as you get.  Do you understand?
14             THE DEFENDANT:  Yes, ma'am.
15             THE COURT:  So that means you're gonna go
16 to this job, you're gonna hold this job.  And you're
17 gonna go to your treatment and you're gonna go to
18 your classes and you're not gonna abuse drugs.
19      I don't take this lightly.  When I started this
20 job, I had cases from the Probation Office where
21 there were four, five dirty drops.  And I've asked
22 them not to -- not to do that anymore.  I don't
23 tolerate it.  If you're on federal paper, you're not
24 using drugs.  You shouldn't be using drugs anyway,
25 let alone on federal paper.

1    So you understand you're gonna stay clean?  I'm
2    gonna let you go to the job.  But if I get another
3    violation, we're gonna come back on a petition to
4    revoke and I'm not gonna be as nice this time.
5        Can I get the assurance of, is it Mrs. Lacy?
6            MRS. LACY:  Yes, Your Honor.
7            THE COURT:  Mrs. Lacy, can I get your
8    assurance that you will do whatever you can to help
9    him stay straight?
10           MRS. LACY:  Yes, Your Honor.  I recently,
11   like he said, moved back from Chicago to --
12           THE COURT:  I appreciate your initiative.
13           MRS. LACY:  -- keep him on track.  I don't
14   want to lose my husband to the system again.  I love
15   him.  And you know, the Bible says 'til death do us
16   part.  I'm willing to put forth the effort and do
17   what I must.
18       When I left Springfield to move to Chicago, I
19   had two jobs here.  I was PRN at both my jobs here
20   before I start my life in Chicago.  Now I'm PRN at
21   the job in Chicago to come back to my jobs in
22   Springfield.
23           THE COURT:  Well, I appreciate it.  And I
24   hope we can be successful here.
25           MRS. LACY:  Yes.  I'm still upset with him,

```
 1   but I'm willing to work past this.
 2               THE COURT:  Okay.  So we're gonna continue
 3   this matter generally.  And I hope I get no more of
 4   these reports.  I mean I've never, this quickly, had
 5   this big of a report on any of my people on
 6   supervised release.  I hope to never see another
 7   one, Mr. Lacy.
 8               THE DEFENDANT:  No, Your Honor.
 9               THE COURT:  Thank you, sir.  Court is
10   adjourned in this matter.
11
12   I, KATHY J. SULLIVAN, CSR, RPR, CRR, Official Court
13   Reporter, certify that the foregoing is a correct
14   transcript from the record of proceedings in the
15   above-entitled matter.
16
17
18
19
20                     This transcript contains the
21                     digital signature of:
22
23                     Kathy J. Sullivan, CSR, RPR, CRR
24                     License #084-002768
25
```